Terry MAY, Plaintiff-Appellant,

v.

TRANSWORLD DRILLING CO., et al.,
Defendants-Appellees.

No. 85–4325.

United States Court of Appeals,
Fifth Circuit.

April 11, 1986.

Lampton O. Williams, Joe H. Montgomery, Williams, Williams & Montgomery, Poplarville, Miss., for plaintiff-appellant.

Karl Wiesenburg, Wiesenburg & Reed, William F. Jordan, Pascagoula, Miss., for defendants-appellees.

Before THORNBERRY, ALVIN B. RUBIN, and E. GRADY JOLLY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The issue to be resolved in this case is whether a shipyard worker injured on dry land can recover under the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. § 905(b), which accords a tort remedy to persons sustaining injuries "caused by the negligence of a vessel."[1] We hold that this statutory provision does not create a new federal tort but merely recognizes the continued, albeit narrowed, existence of an historic maritime tort remedy. Accordingly, we find that a shipyard worker who was injured while working in a storage area moving fabricated steel that was to be installed as part of a vessel did not sustain an injury cognizable under that statute. Injury on navigable waters is a sine qua non of the maritime tort. We therefore affirm the summary judgment granted the defendants by the district court.

## I.

Litton Systems, Inc. was building a number of drilling vessels under separate contracts with Transworld Drilling Company, Keyes Offshore, Inc., and Huthnance Drilling Company, at its shipyard in Pascagoula, Mississippi. On the day the injury occurred, work on the vessels had reached various stages of completeness, ranging from 72.1 percent complete to 2.5 percent complete. Terry May was employed by Litton as a rigger. He asserts that he was assigned to work overtime with a make-

---

1. 33 U.S.C. § 905(b). At the time of May's accident, § 905(b) read, in its entirety:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. *If such person was employed by the vessel to provide shipbuilding or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing shipbuilding or repair services to the vessel.* The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under the chapter. (Emphasis added.)

In 1984, this section was amended and the following provision was substituted for the italicized sentence above:

If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer.

The 1984 amendment to § 905(b) is applicable only to injuries occurring after September 28, 1984 and hence does not itself preclude May's claim against Litton, his employer, as the vessel owner. LHWCA Amendments of 1984, Pub.L. No. 98–426, § 5(b), 98 Stat. 1639, 1641.

shift crew because Litton was lagging behind its production schedule. As instructed by his supervisor, May was working with a crane moving large pieces of fabricated steel into position for installation on the legs of one of the incomplete drilling structures. A piece of steel that was part of an assembly intended for one of the vessels-to-be fell on him, injuring him severely. The steel piece had been standing vertically, had not been braced or tacked, and neither May nor any other Litton employee had been working with this assembly. The particular vessel under construction for which the assembly was intended has never been identified.

May alleges that, because of a previous shipyard accident, Litton had adopted a special safety regulation that required all freestanding vessel parts to be properly braced or tacked. May contends that Litton's supervisors were urging Litton's employees to work in a hurried manner, with insufficient lighting, and with a makeshift crew. As a result of the haste, according to May, the safety rule was being violated.

May was covered by the Longshore and Harbor Worker's Compensation Act and is receiving compensation benefits. But he contends that he also has a third-party tort claim against Litton, his employer, as the owner of the inchoate vessel, for the negligence of Litton's supervisors as the negligence of a vessel,[2] or, if Litton is not the owner, then against the companies for which Litton was building the vessels, as the vessel owners.[3]

May invoked diversity jurisdiction, and the parties are indeed diverse in citizenship. In this appeal, however, Litton argues that the district court "correctly held that it did not have federal subject matter jurisdiction of the plaintiff's 33 U.S.C. 905(b) claim."

The district court, however, did not so hold. It granted Litton's motion for summary judgment on the basis that May's injury occurred on land and, therefore, did not constitute a negligence claim cognizable under § 905(b).

## II.

Whether the district court had jurisdiction to consider May's claims must be distinguished from whether May's allegations state a cause of action under § 905(b). A judgment dismissing a claim for want of jurisdiction is not res judicata on the merits, but a judgment of dismissal for failure to state a claim is a judgment on the merits, with preclusive effect. In *Parker v. South Louisiana Contractors, Inc.*,[4] we discussed federal jurisdiction in cases in which an injury occurs on land and a § 905(b) claim is asserted based solely on admiralty jurisdiction.[5] In accordance with consistent prior authority, we held that admiralty tort jurisdiction is dependent on the locality of the tortious act,[6] and that § 905(b) "neither expanded nor constricted" the boundaries of maritime jurisdiction,[7] nor did it create a new federal cause of action cognizable under federal-question jurisdiction.[8]

*Parker* recognized that, even if a tort occurs on navigable waters, a maritime nexus is also a prerequisite to admiralty jurisdiction, as the Supreme Court held in *Executive Jet Aviation, Inc. v. City of Cleveland.*[9] Because May's injury occurred on land in a shipyard, not even the first requirement of admiralty jurisdiction was met here.

The district court, therefore, did not have jurisdiction in admiralty. It did, how-

---

**2.** *See, e.g., Pichoff v. Bisso Towboat Co.,* 748 F.2d 300, 302–03 (5th Cir.1984).

**3.** *See, e.g., Hall v. Hvide Hull No. 3,* 746 F.2d 294, 304–05 (5th Cir.1984), *cert. denied,* — U.S. ——, 106 S.Ct. 69, 88 L.Ed.2d 56 (1985).

**4.** 537 F.2d 113 (5th Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

**5.** *See* 28 U.S.C. § 1333.

**6.** *Parker,* 537 F.2d at 115 & n. 3.

**7.** *Id.* at 117.

**8.** *Id.* at 118; 28 U.S.C. § 1337.

**9.** 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454, 467 (1972).

ever, have jurisdiction of the controversy because of the diversity of citizenship of the parties,[10] whatever the nature of the cause of action.[11] The issue, then, is whether, under the facts shown by the materials filed in opposition to the summary judgment motion, construed most favorably to May, he may recover under § 905(b).

### III.

■ Our opinions interpreting the applicability of § 905(b) to injuries that are allegedly caused by the negligence of a vessel under construction, whether on water[12] or on dry land,[13] contain statements that are not fully consistent.[14] The inconsistency has arisen, perhaps in part, because we have not always distinguished jurisdiction from the sufficiency of the plaintiff's evidence to establish a claim under § 905(b). Following prior Fifth Circuit precedent and the recent First Circuit decision in *Drake v. Raymark Industries, Inc.,*[15] we here explicitly hold that § 905(b) permits only the assertion of a claim for a maritime tort. Only if a claimant first alleges facts comprising a maritime tort do we need inquire whether he has established the specific elements of a § 905(b) cause of action: (1) the

involvement of a "vessel",[16] (2) the "negligence of the vessel,"[17] and (3) other subsidiary issues, such as the identity of the vessel owner.[18]

■ "Congress did not," we said in *Parker,* "intend section 905(b) to create a new or broader cause of action in admiralty."[19] "Taken as a whole," we added, its primary purpose was "to curtail rather than expand the availability of third party actions in admiralty."[20] It preserves an injured worker's pre-existing right, under general maritime law, to recover for third-party negligence, but eliminated his right to bring actions against third parties based on unseaworthiness.[21]

We affirmed *Parker* in *Christoff v. Bergeron Industries, Inc.*[22] The Fourth Circuit reached the same conclusion in *Holland v. Sea-Land Service,*[23] and the Eleventh Circuit followed suit in *Harville v. Johns-Manville Products Corp.*[24] The First Circuit has recently analyzed and agreed with these decisions in *Drake v. Raymark Industries.*[25] *Drake* held that "§ 905(b) is limited to maritime torts," defining these as "torts cognizable in admiralty (regardless of the actual basis of jurisdiction, such as diversity)."[26]

---

**10.** 28 U.S.C. § 1332.

**11.** *See Rubin & King, New Cargo From Old Ports: Recent Significant Maritime Personal Injury Cases,* 8 Mar. Law. 1, 10 (1983).

**12.** *See, e.g., Hall v. Hvide Hull No. 3,* 746 F.2d 294 (5th Cir.1984), *cert. denied,* — U.S. —, 106 S.Ct. 69, 88 L.Ed.2d 56 (1985); *Lundy v. Litton Sys., Inc.,* 624 F.2d 590 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981).

**13.** *See, e.g., Christoff v. Bergeron Indus., Inc.,* 748 F.2d 297 (5th Cir.1984); *Trussell v. Litton Sys., Inc.,* 753 F.2d 366 (5th Cir.1984).

**14.** *See Drake v. Raymark Indus., Inc.,* 772 F.2d 1007, 1014, 1016–18 (1st Cir.1985).

**15.** 772 F.2d 1007 (1st Cir.1985).

**16.** *See, e.g., Trussell,* 753 F.2d at 367; *Hall,* 746 F.2d at 298–99; *Lundy,* 624 F.2d at 592; *see also McCarthy v. The Bark Peking,* 716 F.2d 130, 133–34 (2d Cir.1983), *cert. denied,* 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984).

**17.** *See Scindia Steam Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981); *Futo v. Lykes Bros. S.S. Co.,* 742 F.2d 209 (5th Cir.1984).

**18.** *See, e.g., Hall,* 746 F.2d at 304–05.

**19.** 537 F.2d at 117.

**20.** *Id.*

**21.** *Id.; see generally Drake,* 772 F.2d at 1013–16.

**22.** 748 F.2d 297 (5th Cir.1984).

**23.** 655 F.2d 556 (4th Cir.1981), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982).

**24.** 731 F.2d 775 (11th Cir.1984).

**25.** 772 F.2d 1007 (1st Cir.1985).

**26.** *Id.* at 1012; *see also Austin v. Unarco Industries, Inc.,* 705 F.2d 1 (1st Cir.), *cert. denied,* 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983).

■ The test to determine the existence of a cause of action in maritime tort is identical with that applied to determine jurisdiction in admiralty.[27] The Supreme Court, in *Foremost Insurance Company v. Richardson*,[28] held that, as indicated in *Executive Jet*,[29] it is requisite to proof of a maritime tort that there be an injury on navigable waters (the traditional "locality" test) and, in addition, that the alleged wrong bear a significant relationship to traditional maritime activity.

■ May's injury did not occur on navigable waters. May's claim, therefore, fails to meet the test for a maritime tort, just as it fails to meet the test to establish admiralty jurisdiction. As *Drake* states, § 905(b) "implicitly requires that a tort be consummated within the admiralty jurisdiction to be cognizable under the statute."[30] Even if May can prove every fact he has asserted, he cannot show that any of the defendants committed a maritime tort. His claim, therefore, was properly dismissed by summary judgment on the merits, and the judgment is, therefore, affirmed.

---

27. *Cf. Hall v. Hvide Hull No. 3*, 746 F.2d 294, 302–03 (5th Cir.1984) (suggesting that pre-*Executive Jet/Foremost Ins. Co.* test for maritime tort codified in § 905(b) by 1972 amendments to LHWCA); *but see Drake v. Raymark Indus., Inc.*, 772 F.2d 1007, 1017–18 (1st Cir.1985) (rejecting *Hall's* "codification" theory).

28. 457 U.S. 668, 673, 102 S.Ct. 2654, 2657, 73 L.Ed.2d 300, 305 (1982).

29. 409 U.S. at 253, 93 S.Ct. at 497, 34 L.Ed.2d at 459; *see also Victory Carriers, Inc. v. Law*, 404 U.S. 202, 204, 92 S.Ct. 418, 420, 30 L.Ed.2d 383 (1971).

30. 772 F.2d at 1014.