# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 16, 2011

No. 10-31221
Summary Calendar

Lyle W. Cayce
Clerk

RODNEY G. HAMM,

Plaintiff - Appellee,

v.

ISLAND OPERATING COMPANY, INC.; RODAN MARINE SERVICES II, L.L.C.,

Defendants - Appellants.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:08-CV-1710

Before HIGGINBOTHAM, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

This case is before us on an interlocutory appeal brought by Island Operating Company, Inc. (IOC) and Rodan Marine Services II, LLC. At issue is whether the applicable statute of limitations is three years under federal maritime law or one year under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1333 *et seq*. Also at issue is whether IOC and Rodan are

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 10-31221

entitled to a jury trial. For the following reasons, we AFFIRM the order of the district court denying IOC's motion to dismiss and alternative motion for summary judgment, and granting Hamm's motion to have this case classified as an admiralty suit and designated for a non-jury trial.

## I. Facts and Proceedings

In June 2007 Plaintiff Rodney G. Hamm suffered injuries to his back and hips while working on the deck of the M/V Tara Louisa, a vessel owned and operated by his employer, Rodan. At that time, the Tara Louisa was delivering equipment to and picking up equipment from a permanent oil platform off the coast of Louisiana, on the Outer Continental Shelf. A crane operated by IOC was moving equipment to and from the platform and the Tara Louisa. Hamm and a co-employee were helping to guide the equipment and to connect it to or disconnect it from the crane. While he was performing this task, a cargo basket became caught on the hook of the crane and swung toward Hamm, pinning him between the cargo basket and the side of the vessel. Hamm sued a number of defendants, including IOC and Rodan, in November 2008.

Hamm asserted that his claims fall within the district court's admiralty jurisdiction. He elected a non-jury trial pursuant to Rule 9(h) of the Federal Rules of Civil Procedure. In their answers, IOC and Rodan requested a jury trial. The court clerk set the case for jury trial. Hamm moved to have the case classified as an admiralty suit and designated for a non-jury trial. IOC moved to dismiss or alternatively for summary judgment, based on Louisiana's one-year limitations period, which IOC asserts is the applicable substantive law under OCSLA. Adopting the magistrate judge's report and recommendation, the district court granted Hamm's motions and denied IOC's.

IOC and Rodan each filed a motion requesting that the district court certify its order for interlocutory appeal under 28 U.S.C. § 1292(b). The district court granted each motion, finding that its order involved controlling questions

2

of law as to which there were substantial grounds for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation.  We granted IOC's and Rodan's petitions for permission to bring this appeal.

On appeal, IOC argues that it is entitled to have Hamm's claims against it dismissed, or alternatively to have summary judgment granted in its favor, on the ground that Hamm's claims are time-barred under Louisiana's one-year statute of limitations.  In the alternative, IOC argues that it is entitled to a jury trial.  Rodan argues that it is entitled to a jury trial if IOC is so entitled.

## II. Standard of Review

We review *de novo* a district court's determination of a Rule 12(b)(6) motion to dismiss.  *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008).  "When reviewing a motion to dismiss, we must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." *Id.*  To survive a motion to dismiss, the non-moving party must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007).

We likewise review a district court's ruling on a motion for summary judgment *de novo*, applying the same legal standard as the district court. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).  Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  We "review the evidence and any inferences therefrom in the light most favorable to the nonmoving party." *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

As the magistrate judge correctly observed, the relevant facts are undisputed: Hamm "filed suit more than one year after the alleged accident occurred . . . [Hamm] was injured on the deck of the vessel; the crane is mounted on the platform; and [Hamm] made a Rule 9(h) designation."

No. 10-31221

## III. Discussion

### A.

IOC argues that Hamm's claims against it are time-barred under Louisiana's one-year prescriptive period. *See* La. Civ. Code art. 3492. According to IOC, Louisiana's substantive law applies to Hamm's claims against it because OCSLA adopts the law of the adjacent state as the governing law for the Outer Continental Shelf. *See* 43 U.S.C. § 1333(a)(2)(A). Hamm does not contest that Louisiana law applies if OCSLA is the governing substantive law. Hamm counters, however, that the district court correctly held federal maritime law to be the applicable substantive law, and that under federal maritime law, Hamm had three years within which to file suit. *See* 46 U.S.C. § 30106. We conclude that the district court correctly held that federal maritime law is the applicable substantive law.

> OCSLA's choice of law provision states:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . .

43 U.S.C. § 1333(a)(2)(A). This court applies a three-part test to determine whether the law of the adjacent state governs as "surrogate federal law under OCSLA['s]" choice of law provision: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artifical [*sic*] structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with

4

No. 10-31221

Federal law." *Union Tex. Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990). We need only consider the second prong of this test because we conclude, as did the district court, that federal maritime law applies of its own force.

Whether federal maritime law applies of its own force turns on whether Hamm has alleged a maritime tort against IOC. *See Strong v. B.P. Exploration & Prod., Inc.*, 440 F.3d 665, 670 (5th Cir. 2006) (holding that because the plaintiff "has alleged a traditional maritime tort, federal maritime law applies of its own force"). We have previously stated that "[t]he test to determine the existence of a cause of action in maritime tort is identical with that applied to determine jurisdiction in admiralty." *May v. Transworld Drilling Co.*, 786 F.2d 1261, 1265 (5th Cir. 1986).

The Supreme Court articulated the test for establishing admiralty jurisdiction over tort claims in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*:

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. 527, 534 (1995) (internal citations omitted). We must now apply this test to the facts alleged in Hamm's complaint.

The location element is satisfied here because Hamm suffered his injury on the deck of the Tara Louisa, a vessel afloat on navigable water. This court

5

has repeatedly held that a tort occurs on navigable waters when the plaintiff sustains his injury on navigable waters, even if the tortious act occurred on land. *See, e.g., Taylor v. Kennedy Engine, Inc.*, 861 F.2d 127, 128-29 (5th Cir. 1988) (collecting cases).

The connection element is also met. First, we have little difficulty concluding that the type of incident involved is potentially disruptive of maritime commerce. *Grubart* instructs us to describe the type of incident at issue "at an intermediate level of possible generality." 513 U.S. at 538. The type of incident here may be described as injury caused by a mishap during the course of loading and unloading cargo and equipment to and from a vessel by crane. Not only can such accidents injure seamen, as Hamm alleges occurred in this case, but they might also damage vessels, thereby causing delay in the shipment of goods in maritime commerce. Second, we conclude that the general character of the activity involved—the loading and unloading of a vessel—is substantially related to traditional maritime activity. *See Drachenberg v. Canal Barge Co., Inc.*, 571 F.2d 912, 917 (5th Cir. 1978) (holding that "unloading of the ship's cargo" is a "traditional maritime activity").

Because Hamm has alleged a maritime tort, federal maritime law applies of its own force. Therefore, Louisiana law cannot apply as surrogate federal law under OCSLA. Accordingly, the applicable limitations period is three years, *see* 46 U.S.C. § 30106, and Hamm's claims against IOC are not time-barred.

**B.**

Alternatively, IOC argues that even if maritime law governs, it has a Seventh Amendment right to a jury trial. It is well-established that the right to trial by jury does not apply to admiralty suits. *See, e.g., Parsons v. Bedford*, 28 U.S. (3 Pet.) 443, 446-47 (1830). Accordingly, IOC argues that although maritime law governs, this is not an admiralty or maritime suit, but an OCSLA suit in which maritime law applies pursuant to OCSLA's choice of law provision,

*see* 43 U.S.C. § 1333(a)(2)(A), as interpreted by *PLT Engineering, Inc.* 895 F.2d at 1047 (holding that the law of the adjacent state does not govern under OCLSA when, *inter alia*, "[f]ederal maritime law . . . appl[ies] of its own force").

IOC's theory is unpersuasive.  Our precedent recognizes that OCSLA and its choice of law provision were not intended to displace general maritime causes of action whenever a court has OCSLA jurisdiction.  *See Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996).  Moreover, even if the district court properly concluded that it has both maritime jurisdiction and jurisdiction under OCSLA (an issue we need not decide), IOC still has no right to a jury trial because Hamm elected a non-jury trial under Rule 9(h) of the Federal Rules of Civil Procedure.  Rule 9(h) provides that "[i]f a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rule . . . 38(e)," which allows for bench trials in maritime cases.  *See* Fed. R. Civ. P. 38(e).  In situations like Hamm's, "the election made available to the pleader pursuant to Rule 9(h) is dispositive." *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 986 (5th Cir. 1978).  It is undisputed that Hamm made his Rule 9(h) election.  Therefore, IOC has no right to a jury trial.  It follows that Rodan also has no right to a jury trial because its argument on appeal is that it is entitled to a jury trial if IOC is so entitled.

## IV. Conclusion

For the foregoing reasons, the district court's order is AFFIRMED.