IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 22, 2008

Charles R. Fulbruge III
Clerk

No. 07-60402

MARK L MCLAURIN; TAWANA MCLAURIN

Plaintiffs - Appellants

v.

NOBLE DRILLING (US) INC; NOBLE DRILLING CORPORATION; NOBLE
DRILLING SERVICES INC; JOHN DOES 1–100

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before GARWOOD, CLEMENT, and ELROD, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Mark and Tawana McLaurin (the "McLaurins") appeal the district court's grant of summary judgment in favor of Noble Drilling (US) Inc., Noble Drilling Corporation, Noble Drilling Services, Inc., and John Does 1–100 (collectively referred to as "Noble Drilling"). The McLaurins specifically challenge the district court's finding that their state-law tort claims against Noble Drilling were preempted by § 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950. For the following reasons, we reverse the decision of the district court.

## I. FACTS AND PROCEEDINGS

Mark McLaurin ("McLaurin"), an employee of Friede Goldman Halter, Inc. ("Friede Goldman"), was injured in Friede Goldman's shipyard while working as a scaffold carpenter supporting construction work on the CLYDE BOUDREAUX, a vessel owned by Noble Drilling. The vessel, a "mobile offshore drilling unit," was moored in Friede Goldman's shipyard and was in the process of being converted for deep-water use. As an employee of Friede Goldman, McLaurin worked approximately 200 feet from the vessel to fabricate "pontoon extensions" to be used in the conversion. McLaurin was injured when a shell of one of the pontoon extensions, suspended by a crane that was left unattended, fell on him and crushed his left hand and arm.

McLaurin received medical benefits and disability compensation from Friede Goldman under the LHWCA. The McLaurins then sued Noble Drilling as the vessel owner, alleging negligence claims under Mississippi law, general maritime law, and § 905(b) of the LHWCA. They claimed that Noble Drilling "had assumed substantial control, through its on-site personnel in the shipyard, over the work on the pontoons and the sequence in which it was performed, and failed to exercise due care to ensure the observation of proper safety practices."

Noble Drilling moved for summary judgment, arguing that the McLaurins' state-law tort claims were preempted by the last sentence of § 905(b) of the LHWCA, which states: "The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." 33 U.S.C. § 905(b). In opposition to summary judgment, the McLaurins argued that § 905(b) only governs claims against the vessel for vessel negligence. Citing Richendollar v. Diamond M Drilling Co., 819 F.2d 124, 125 (5th Cir. 1987) (en banc) (internal quotations omitted), in which this Court noted that a vessel is viewed "as a separate entity distinct from its owner," the McLaurins argued that they were "not just pursuing an in rem negligence claim

against the vessel; [but were] also pursuing separate claims against the vessel owner."

The district court recognized that § 905(b) allows injured employees to bring third-party negligence actions against the vessel for vessel negligence, and reiterated that the remedies provided by that section were exclusive of all other remedies. McLaurin v. Noble Drilling (U.S.) Inc., No. 1:05-CV-463, slip op. at 2 (S.D. Miss. Apr. 4, 2007). Based upon the language of § 905(b), the district court concluded that § 905(b) preempted the McLaurins' state-law tort and general maritime claims, but then dismissed their § 905(b) claim as not cognizable because the injury occurred on land and not on navigable waters. Id. at 2–3.

The McLaurins appeal only the dismissal of their state-law tort claims, arguing that if they cannot state a cognizable claim under § 905(b), then the language of that section does not preempt their state-law tort claims.

## II. STANDARD OF REVIEW

Guided by the same standards under Rule 56 of the Federal Rules of Civil Procedure as the district court, this Court reviews grants of summary judgment de novo. Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 498 (5th Cir. 2001). Therefore, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." Minter v. Great Am. Ins. Co. of N.Y., 423 F.3d 460, 465 (5th Cir. 2005). But "[w]here the non-moving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' no genuine issue of material fact can exist." Whiting v.

Univ. of S. Miss., 451 F.3d 339, 344 (5th Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

"In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992). "The statute must be read as a whole, and only if the language is unclear do we turn to statutory history." United States v. Ridgeway, 489 F.3d 732, 734 (5th Cir. 2007).

## III. DISCUSSION

The McLaurins acknowledge that the district court did not err in finding that their § 905(b) claim fails on the merits. They argue, however, that this should not preclude their state-law tort claims because their claims do not implicate Noble Drilling's negligence as owner of a "vessel." Noble Drilling counters, arguing that the district court correctly found that it qualifies as a "vessel" under the LHWCA and, therefore, § 905(b)'s exclusivity provision preempts McLaurin's state-law tort claims. Whether Noble Drilling qualifies as a "vessel" under the LHWCA, however, is irrelevant for analysis under these facts. We hold that the district court was correct in finding that the McLaurins' § 905(b) claim fails as a matter of law, but it erred in finding that § 905(b)'s exclusivity provision preempts the McLaurins' state-law tort claims against Noble Drilling.

## A. The McLaurins' § 905(b) Claim

The LHWCA was created to establish a compensation scheme for injured maritime workers. Under the LHWCA, those persons injured while working in or near harbor facilities as longshoremen, shipbuilders, ship repairers, and various harbor workers, such as carpenters, cleaners, or painters are limited to compensation claims against their employers. The LHWCA covers a worker for

4

any injury if he is engaged in maritime employment, provided that he meets a two-fold test: (1) his injury must occur within an area adjoining navigable waters of the United States, known as the "situs" test, and (2) the nature of the work performed by him must be maritime in nature, known as the "status" test. See Ne. Marine Terminal Co. v. Caputo, 432 U.S. 249, 279–80 (1977).[1]

An injured maritime worker may bring an action under the LHWCA against his employer for workers' compensation, see § 904, and against an owner for its vessel's negligence, see § 905(b).[2] McLaurin received workers' compensation from his employer, Friede Goldman, under § 904,[3] but the district court dismissed his § 905(b) claim for vessel negligence against Noble Drilling. If McLaurin had been entitled to recover for vessel negligence under § 905(b), then he would not have been able to sue the vessel in tort because "[t]he remedy provided in [§ 905(b)] shall be exclusive of all other remedies against the vessel. . . ." 33 U.S.C. § 905(b).

---

[1] The parties have stipulated that McLaurin meets the "status" test and qualifies as an "employee" under the LHWCA, and thus the work performed by McLaurin was maritime in nature.

[2] There are exceptions to this rule. Congress amended the LHWCA in 1984 to close a loophole that allowed certain injured maritime workers to sue their employers who are also vessel owners once under § 904 and again under § 905(b). See Gay v. Barge 266, 915 F.2d 1007, 1010–11 (5th Cir. 1990) (discussing the statutory prohibition on § 905(b) suits by persons "employed to provide shipbuilding, repairing, or breaking services against his employer . . . for the negligence of the vessel" (internal quotations omitted)); New v. Associated Painting Servs., Inc., 863 F.2d 1205, 1210 (5th Cir. 1989) (noting that the 1984 amendments to the LHWCA preclude suits against owner-employers by persons "hired to restore a vessel to safe operating condition"). Here, these restrictions are not implicated because McLaurin's employer is not also the owner of the vessel.

[3] A maritime worker's right to claim workers' compensation from his employer is codified in § 904; if he qualifies for this remedy, then § 905(a) instructs him that his § 904 remedy is exclusive to all other remedies: "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee . . . ." 33 U.S.C. § 905(a) (emphasis added). Therefore, McLaurin may not sue Friede Goldman in tort.

But "§ 905(b) permits only the assertion of a claim for a maritime tort." May v. Transworld Drilling Co., 786 F.2d 1261, 1264 (5th Cir. 1986).

> Only if a claimant first alleges facts comprising a maritime tort do we need inquire whether he has established the specific elements of a § 905(b) cause of action: (1) the involvement of a vessel, (2) the negligence of the vessel, and (3) other subsidiary issues, such as the identity of the vessel owner.

Id. (internal quotations and footnotes omitted) (emphasis added); see also Richendollar, 819 F.2d at 128 (holding that § 905(b) does not create or extend admiralty jurisdiction); Drake v. Raymark Indus., Inc., 772 F.2d 1007, 1014 (1st Cir. 1985) ("[Section] 905(b) implicitly requires that a tort be consummated within the admiralty jurisdiction to be cognizable under the statute.").[4] Because "[i]njury on navigable waters is a sine qua non of the maritime tort," this Court has held that a maritime worker injured on dry land cannot sustain a cognizable injury under § 905(b) of the LHWCA. May, 786 F.2d at 1262.[5] Indeed, "nonmaritime claims are not converted into maritime claims by virtue of the

---

[4] It is important to note that the district court's jurisdiction to consider the McLaurins' claims is distinct from whether the McLaurins' claims state a cognizable action under § 905(b). Although the district court did not have jurisdiction in admiralty because McLaurin's injury ashore does not implicate a nexus with maritime activity, the district court here had jurisdiction to hear causes of action of any nature due to the diversity of the parties. See May, 786 F.2d at 1263–64; Parker v. S. La. Contractors, Inc., 537 F.2d 113, 115 (5th Cir. 1976).

[5] In May, this Court did not examine whether the vessel accused of negligence in the plaintiff's claim qualified as a "vessel" for purposes of a § 905(b) claim. The plaintiff was a "shipyard worker who was injured while working in a storage area moving fabricated steel that was to be installed as part of a vessel," but did not work on the vessel itself. May, 786 F.2d at 1262. But the plaintiff in Richendollar was injured while working on the allegedly negligent vessel, and this Court was, therefore, required to examine the character of the vessel. 819 F.2d at 125 (holding that "in order for a waterborne structure to qualify as a 'vessel' under § 905(b), it must be a vessel for purposes of maritime jurisdiction[, meaning that] [s]uch a vessel must be capable of navigation or its special purpose use on or in water"). Today, if this Court found it necessary to characterize a vessel for purposes of § 905(b), it would ask whether the watercraft is "practically capable of maritime transportation." Stewart v. Dutra Constr. Co., 543 U.S. 481, 497 (2005) (applying 1 U.S.C. § 3). See generally Benjamin S. Allums, Stewart v. Dutra Construction Co.: Defining a Vessel in the Wake of the SUPER SCOOP, 80 Tul. L. Rev. 1467 (2006) (commenting on the Supreme Court's choice to define "vessel" uniformly across federal maritime statutes).

application of [§] 905(b)." Dozier v. Rowan Drilling Co., 397 F. Supp. 2d 837, 852 (S.D. Tex. 2005) (applying this Court's reasoning in Parker v. South Louisiana Contractors, Inc., 537 F.2d 113, 116–17 (5th Cir. 1976)).

Under § 905(b), a vessel owner owes a duty to exercise reasonable care to make the vessel safe if he actively participates in the operations or maintains control over the area, or if such a duty is imposed upon him by contract or law. See Howlett v. Birkdale Shipping Co., 512 U.S. 92, 98 (1994) (citing Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 167–78 (1981)); Manuel v. Cameron Offshore Boats, Inc., 103 F.3d 31, 33 (5th Cir. 1997). But this Court has "decline[d] to fashion a general standard of 'reasonable care' that would require a shipowner to protect against any and all hazards a longshoreman might encounter in the course of his work." Levene v. Pintail Enters., Inc., 943 F.2d 528, 534 (5th Cir. 1991). "Other than the duty to protect against hazards under control of the ship . . ., we do not think [the Supreme Court in Scindia, 451 U.S. at 167–78,] imposes any duty on a shipowner to protect against hazards arising on a separate ship," or anywhere off the vessel. Id.[6]

It is clear that the McLaurins have not alleged facts sufficient to support a § 905(b) claim for vessel negligence. The record reveals that McLaurin was not located on the vessel when he was injured, but rather he was injured ashore;

---

[6] The situs test for whether a maritime worker may bring a negligence action against the owner of a vessel for vessel negligence under § 905(b) is distinct from whether a worker may collect workers' compensation from his employer under § 904. Prior to 1972, the standard for coverage under § 904 and § 905(b) were similar; an employee was eligible for benefits if he was injured in the course of his employment on navigable waters. See ROBERT FORCE & MARTIN J. NORRIS, THE LAW OF MARITIME PERSONAL INJURIES § 3.2 (5th ed. 2004). The 1972 amendments to the LHWCA extended coverage landward only for § 904 claims, not § 905(b) claims, which, by the nature of the claim, only apply to injuries occurring on vessels. Today, coverage for § 904 claims extends to employees injured on land relating to navigable waters, including "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel," § 903(a), and only to those employees who qualify as "longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker," § 902(3).

therefore, the injury "did not occur on navigable waters" and "fails to meet the test for a maritime tort." May, 786 F.2d at 1265. The district court was correct in dismissing the McLaurins' § 905(b) claim for vessel negligence against Noble Drilling as the vessel owner. The question is thus whether the McLaurins may advance a state-law tort claim against Noble Drilling for its own alleged negligence when he cannot state a cognizable claim under § 905(b).

B. The McLaurins' State-Law Tort Claims and § 933 of the LHWCA

The Supreme Court has held:

[T]he [LHWCA] provides nonseaman maritime workers . . . with no-fault workers' compensation claims (against their employer, § 904(b)) and [vessel] negligence claims (against the vessel, § 905(b)) for injury and death. As to those two defendants, the LHWCA expressly pre-empts all other claims, §§ 905(a), (b), but it expressly preserves all claims against third parties, §§ 933(a), (i).

Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 818 (2001) (citation omitted). This Court has recognized that "[a] person entitled to compensation under the LHWCA may both recover compensation from his or her employer [under § 904], and pursue a separate negligence action against a third party [under § 933(a)]." Kelly v. Red Fox Cos. of New Iberia Inc., 123 F. App'x 595, 596 (5th Cir. 2005) (per curiam) (unpublished).[7] Importantly, § 933

---

[7] However, "[i]n the event that the person reaches settlement with a third party . . ., 'written approval of the settlement [must be] obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation." Kelly, 123 F. App'x at 596 (quoting 33 U.S.C. § 933(g)(1)). As this Court has observed, under the LHWCA,

"[t]he employer is compelled to pay the benefits regardless of whether it was negligent or not. In return, the employer takes a lien for the total amount of benefits paid on any judgment or settlement the employee may later obtain. Accordingly, the injured employee is fully—but not doubly—compensated; the tortfeasor pays for the injuries for which it is responsible and the employer recovers so much of its workers' compensation payments as is attributable to the tortfeasor's negligence."

Phillips v. W. Co. of N. Am., 953 F.2d 923, 931 n.9 (5th Cir. 1992) (quoting Stifle v. Marathon Petroleum Co., 876 F.2d 552, 560 (7th Cir. 1989)).

recognizes that a covered employee may have tort remedies against third parties under federal or state law. Section 933 preserves and codifies a maritime worker's common law right to pursue a negligence claim against a third party that is not the employer or a coworker; it does not create a cause of action nor establish a third party's liability for negligence. See 33 U.S.C. § 933(a); Vega-Mena v. United States, 990 F.2d 684, 690–91 (1st Cir. 1993) (citing Griffis v. Gulf Coast Pre-Stress Co., 850 F.2d 1090, 1091 (5th Cir. 1988)).

> Note the language of § 933(a):

> If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.

33 U.S.C. § 933 (emphasis added). If a maritime worker is eligible for workers' compensation from his employer, § 904 allows him to collect compensation and § 905(a) instructs him that his remedy under the LHWCA is his exclusive remedy against his employer. Section 933 specifically forbids a claim against "the employer or a person . . . in his employ," leaving § 904 as the only avenue of recovery against the employer or a negligent coworker.

Noble Drilling believes that its status as a vessel owner is analogous to that of an employer and, citing § 905(b)'s exclusivity provision, argues that a maritime worker may only sue a vessel owner in its capacity as such under § 905(b). However, a reading of the LHWCA as a whole does not support this argument. Notably, unlike employers, vessel owners are not mentioned in § 933, so a maritime worker may attempt to recover against a vessel owner for vessel negligence under § 905(b), against a vessel owner as a third-party tortfeasor under § 933, or even against a vessel owner as a "borrowing employer" under

§ 904.[8] It is not a vessel owner's status as a vessel owner that dictates which LHWCA provision a maritime worker may use; it is the type of negligence that the worker alleges and the duty that is owed by the vessel owner that is controlling.

Here, the McLaurins did not allege a claim against Noble Drilling specifically under § 933, but they did allege negligence claims under state law in their Complaint.[9] If a maritime worker recovers against a vessel under § 905(b), then he may not also sue the vessel in tort. The McLaurins cannot recover from Noble Drilling as a vessel owner because they cannot state a cognizable claim for vessel negligence under § 905(b), so the language of § 905(b) does not preempt their state-law claim against Noble Drilling as a third-party tortfeasor. The plain language of § 933 clearly contemplates and preserves a maritime worker's ability to pursue separate claims against third parties, including vessel owners allegedly responsible for the injury.

---

[8] Interestingly, the McLaurins argued that Noble Drilling, as the owner of the vessel for which McLaurin manufactured pontoon extensions ashore, owed him a duty under § 905(b) to protect him from unreasonably dangerous conditions in Friede Goldman's shipyard. He believed Noble Drilling owed him a duty because it "had assumed substantial control, through its on-site personnel in the shipyard, over the work on the pontoons and the sequence in which it was performed, and failed to exercise due care to ensure the observation of proper safety practices." Although this pleading fails as a claim under § 905(b), it is possible that it could justify a finding that he is Noble Drilling's "borrowed servant," which may implicate a § 904 workers' compensation claim against Noble Drilling as an employer instead of as a vessel owner. See Total Marine Servs., Inc. v. Director, Office of Worker's Comp. Programs, 87 F.3d 774, 776–77 (5th Cir. 1996). McLaurin's employer, Friede Goldman, does not own the vessel for which he fabricated pontoon extensions, and, thus far, the McLaurins have not alleged that Noble Drilling is a "borrowing employer." But if McLaurin is Noble Drilling's borrowed servant, then the restrictions outlined in note 2, supra, would bar his § 905(b) claim because Noble Drilling is also the vessel owner.

[9] McLaurin's Complaint stated: "This action is being brought against the defendants pursuant to Mississippi common law, General Maritime Law and § 905(b) of the Longshore and Harbor Workers' Compensation Act." McLaurin has further stated that he "received medical benefits and disability compensation from Friede Goldman under the Longshore Act, but brought this action against Noble Drilling as a so-called 'third party'—'some person other than the employer or a person or persons in [its] employ'—as permitted by § 33 of the Longshore Act, 33 U.S.C. § 933."

McLaurin collected workers' compensation under § 904 from his employer. He has no basis, however, for a claim for vessel negligence against Noble Drilling as a vessel owner under § 905(b). Whether or not a claim against Noble Drilling as a third-party tortfeasor under § 933 will be met with success remains to be seen, but what is clear is that nothing in the LHWCA prohibits McLaurin from advancing his state-law tort claims. Therefore, we reverse the district court's dismissal of the McLaurins' state-law tort claims.

## IV. CONCLUSION

The judgment of the district court is REVERSED.